372 So.2d 560 (1979)
Wallace NATHAN, Jr. et al.
v.
Henry Zac CARTER et al.[*]
No. 63935.
Supreme Court of Louisiana.
June 25, 1979.
*561 A. Remy Fransen, Jr., New Orleans, Paul Aucoin, Vacherie, for plaintiff-applicant.
Terry Christovich Gay, A. R. Christovich, Jr., Christovich & Kearney, New Orleans, for defendant-respondent.
MARCUS, Justice.
As a result of Wallace Nathan, Sr.'s death, his son, Wallace Nathan, Jr., and wife, Odessa Nathan (individually and as natural tutrix of her seven minor children) instituted this action to recover damages on August 6, 1976, against certain named executive officers, directors and supervisory employees of Avondale Shipyards, Inc. Also named defendants are Highlands Insurance Company and American Employers Insurance Company, public liability and/or executive liability insurers of the officers and/or employees of Avondale.
Plaintiffs alleged in their petition that Wallace Nathan, Sr. was employed by Avondale as a labor leaderman. On November 5, 1970, as he was walking along a "gangplank" situated between a vessel on which he had been working and the dock, the "gangplank" suddenly and without warning collapsed, causing him to suffer serious injuries, fall into the water and drown. Plaintiffs contended that decedent's death was caused by the negligence of the named executive officers, directors and employees of Avondale. Mrs. Nathan further averred that, at the time of her husband's death, all of her children, including Wallace Nathan, Jr., were minors and that she allowed the one-year period of limitation (applicable to this action) to lapse before instituting suit because of misrepresentations and fraudulent conduct of certain employees and representatives of Avondale designed to prevent her from asserting her cause of action. She also claimed that she was pregnant with the last of her eight children at the time of her husband's death and was under great strain and stress as well as being emotionally depressed when meeting with Avondale officials after her husband's death.
Defendants' answers generally denied the allegations of plaintiffs' petition. Subsequently, a peremptory exception of prescription was pleaded by defendants grounded on the claim that plaintiffs' action had prescribed on its face in that it was filed on August 6, 1976, which was more than one year after the date of the alleged accident (November 5, 1970). A hearing was set on the exception of prescription.
In opposition to the exception of prescription, plaintiffs, relying upon the doctrine of contra non valentem agere non currit (prescription does not run against a person who could not bring his suit), argued that the action was not barred by the one-year period of limitation because of acts of fraud and misrepresentation committed by defendants. In support of this contention, plaintiffs alleged (in their petition and affidavits filed by Mrs. Nathan and her brother) that, approximately two or three days after the death of her husband, Mrs. Nathan and her brother went to the offices of Avondale and met with Mr. Edward Benecech III (claims manager at Avondale). *562 During this meeting, Mr. Benecech assured Mrs. Nathan that a full investigation would be made of her husband's death, that she would be provided with a copy of the final report, that, once the investigation was completed, she would be given a large lump sum settlement as compensation for her husband's death, and that Avondale would settle her claim without the necessity of her hiring an attorney. Mr. Benecech told Mrs. Nathan not to contact an attorney because, if she did, her workmen's compensation benefits would be terminated, all benefits would be cut off while the matter was litigated in court, and the litigation might last five to seven years during which she would receive no benefits. In November 1975, foreclosure proceedings were instituted against Mrs. Nathan's home because of her inability to make the mortgage payments. It was at this time that Mrs. Nathan contacted an attorney.
Defendants offered no evidence contradicting plaintiffs' allegation of misrepresentation and fraudulent conduct. Instead, defendants contended that, even assuming (without admitting) that such conduct occurred, plaintiffs failed to exercise "reasonable diligence" in pursuit of their claim and thus were not barred from asserting it.
The trial court sustained the exception of prescription and dismissed plaintiffs' action against defendants. It noted that, although plaintiffs' uncontroverted allegations might establish that fraudulent conduct on the part of defendants actually prevented plaintiffs from judicially asserting their claims within the one-year prescriptive period, six years was not a period during which such conduct could reasonably be expected to prevent plaintiffs from instituting this action. The court concluded, "[e]ven though plaintiffs shouldn't be held to a timely filing, six years is too long." The court of appeal affirmed, finding that plaintiffs had failed to exercise "reasonable diligence" in asserting their claim.[1] On application of plaintiffs, we granted certiorari to review the correctness of this decision.[2]
The sole issue presented for our consideration is whether, under the facts and circumstances as contained in the record before us, the courts below erred in sustaining defendants' exception of prescription.
It is conceded by the parties herein that the period of limitation applicable to this action is one year from November 5, 1970 (the date of the accident). As a general rule, prescription runs against all persons unless they are included in some exception established by law. La.Civil Code art. 3521. This court has, however, accepted in certain limited situations the common law doctrine contra non valentem agere non currit which means that prescription does not run against a person who could not bring his suit. Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285 (1970); Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916).
This equitable doctrine has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other "ill practices") which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing suit is not willful or the result of his own negligence. See Cartwright v. Chrysler Corp., supra; Dufrene v. Tracy, 232 La. 386, 94 So.2d 297 (1957); Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951); Smith v. Tyson, 193 La. 571, 192 So. 61 (1939); Hyman v. Hibernia Bank & Trust Co., supra; Martin v. Jennings, 10 La.Ann. 553 (La.1855); Boyle v. Mann, 4 La.Ann. 170 (La.1849). As indicated in Hyman v. Hibernia Bank & Trust Co., supra, the doctrine of contra non valentem is, in part, but an application of the long-established principle of law that one should not be able to take advantage of his own wrongful act:
A defendant, who has kept a plaintiff in close confinement during the prescriptive *563 period so as to preclude his bringing suit, could certainly not be allowed to invoke prescription against plaintiff's suit, and thereby reap the fruit of his own wrong. And between incapacitating a plaintiff by confining his body and incapacitating him by fraudulently lulling his mind into a false security and keeping him in ignorance there is no difference in principle. The one mode of preventing the bringing of suit, if equally effective, is as bad as the other. It is equally a wrong of which the perpetrator cannot be allowed to reap the benefit. 139 La. at 418, 71 So. at 600.
The equitable nature of the circumstances in each individual case has determined the applicability of the doctrine. Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1st Cir. 1970).
In applying the law to the facts as contained in the record before us, it is clear that plaintiffs alleged acts of fraud and misrepresentation intentionally committed by defendants (or their representative) designed to hinder, impede, or prevent plaintiffs from asserting their cause of action or lull them into a false security. It is equally apparent that the record herein does not support a finding that plaintiffs' delay in bringing this action was either willful or resulted from plaintiffs' own negligence. As alleged by plaintiffs, defendants threatened Mrs. Nathan with termination of her compensation benefits if she ever contacted an attorney. Viewed in this light, the acts of fraud and misrepresentation committed by defendants constituted a continuing threat calculated to prevent assertion of this claim for as long as the compensation payments continued. As such, plaintiffs' delay in bringing this action was a direct result of the fraud or misrepresentation allegedly committed by defendants rather than of their own willfulness or negligence.
No evidence was adduced on the exception of prescription in the trial court. We conclude that defendants' exception of prescription cannot be sustained on the record before us (i. e., the uncontroverted facts alleged in plaintiffs' petition and set forth in the affidavits filed in opposition to the exception of prescription). Therefore, we must set aside the judgment of the trial court sustaining the exception of prescription and refer the exception to the merits. See Pearson v. Hartford Accident & Indemnity Co., 281 So.2d 724 (La.1973); Hyman v. Hibernia Bank & Trust Co., supra. The case is remanded to the district court to be proceeded with according to law.
Reversed and remanded.
DENNIS and BLANCHE, JJ., concur.
SUMMERS, C. J., dissents for the reasons assigned by the Court of Appeal.
NOTES
[*] Editor's Note: The opinion of the Supreme Court of Louisiana in Cosey v. Cosey, published in the advance sheets at this citation (372 So.2d 560) was withdrawn from the bound volume because rehearing is pending.
[1] 367 So.2d 56 (La.App. 4th Cir. 1979).
[2] 368 So.2d 145 (La.1979).